IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD HOSTETTER, | ) |
| | ) |
| Petitioner, | ) Civil No. 03-532-TC |
| | ) |
| v. | ) FINDINGS AND |
| | ) RECOMMENDATION AND |
| BRIAN BELLEQUE, | ) ORDER |
| | ) |
| Respondent. | ) |
| | ) |

COFFIN, Magistrate Judge.

Presently before the court is the petition for habeas corpus relief (#2).

## **BACKGROUND**

Petitioner was convicted by a Polk County jury of murder and being a felon in possession of

a firearm, and ultimately was sentenced to 25 years imprisonment on the murder conviction, with

1 - FINDINGS AND RECOMMENDATION AND ORDER

a five year minimum, and to 18 months on the possession conviction.[1] After appellate and state post-conviction proceedings failed to provide petitioner with relief, he filed the petition for habeas corpus relief presently before this court. In his petition and supporting briefing, petitioner raises two claims for relief: (1) that his attorney failed to inform him of a plea offer that had been extended by the District Attorney, and misadvised him of his potential sentencing risk upon a jury conviction; and (2) this his attorney failed to contact two witnesses who may have had exculpatory information.[2]

## APPLICABLE LAW ON AEDPA DEFERENCE

Petitioner filed his original petition for habeas corpus relief after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, AEDPA applies to the review of his petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

      (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Originally, petitioner was sentenced to life imprisonment on the murder conviction, with a 25-year minimum, and 18 months on the possession conviction; however, on direct appeal, the Oregon Court of Appeals remanded for resentencing.

[2] In his pro se petition, petitioner originally raised two additional claims. However, in briefing the claims, petitioner's attorney did not raise arguments in support of those claims, and they are deemed abandoned. See Morris v. Woodford, 229 F.3d 775, 779 (9th Cir. 2000).

State court determinations need not be deferred to in every case. See Williams v. Taylor, 529 U.S. 362, 389 (2000)("If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.

Williams, 529 U.S. at 386 (citation omitted).

The Williams court also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law set forth in Supreme Court caselaw; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision yet the court nevertheless arrived at a result different from the Supreme Court precedent. Id. at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13.[3] The evaluation of reasonableness is tested against an objective standard. Id. at 409-10. The Court also noted that:

> [T]he most important point is that an unreasonable application is different from an

---

[3]The Court has also noted that a state-court decision may be an unreasonable application of clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Remdass v. Angelone, 530 U.S. 156 (2000).

incorrect application of federal law . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

## **APPLICABLE LAW ON INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

Review of a claim of ineffective assistance of counsel involves a two part analysis.

A petitioner alleging ineffective assistance of counsel first must show that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight.[4] Id. at 689-90. The reasonableness of counsel's actions "may be determined or substantially influenced by defendant's own statements or actions." Id. at 691.

The second part of the analysis looks at the consequence of any error counsel is found to have made. The error must have been "so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. The petitioner must affirmatively prove the prejudice. Id. at 693. "It is not enough for the [petitioner] to show that

---

[4]"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

the errors had some conceivable effect on the outcome . . ., and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. However, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id. The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

Unless a petitioner shows both error and prejudice, "it cannot be said that a conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 686.

## DISCUSSION

### I.  Ground One

In ground one of his petition, petitioner alleges that trial counsel was ineffective because they failed to advise petitioner that the prosecutor had offered him a particular plea deal and under-represented the sentencing exposure petitioner faced upon a conviction.

This claim was presented to the state post-conviction court, which made the following relevant findings of fact:

> 17. Petitioner failed to prove he would have accepted a plea bargain had he been informed the old guidelines would have applied at sentencing. In fact, during his deposition petitioner stated that regardless of sentencing, he wanted to go to trial. The district attorney offered a guilty plea. Petitioner claimed he was innocent, and a no contest plea was not acceptable. Petitioner would not have pled regardless. The issue is moot.

> 18. Counsel was extremely competent.

Findings of Fact & Conclusions of Law (#19, Ex. 156) at 6. The PCR court concluded that:

> 1. Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the

5 - FINDINGS AND RECOMMENDATION AND ORDER

right to assistance of counsel, as guaranteed by . . . the United States Constitution and as articulated by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)[.]

2.      Petitioner did not prove any of his claims by a preponderance of the evidence.

<u>Id.</u> Under the deference standards of AEDPA, this court cannot say that those conclusions were contrary to or unreasonable applications of federal law. The essential underlying factual finding - that petitioner wanted his case to be tried and would not have accepted any plea bargain, regardless of what sentencing parameters would apply - is disputed, and the court is not wholly convinced that were the issue before the court as a matter of first impression the same finding would be entered. However, this court is not considering the issue with a clean slate or reviewing the finding <u>de novo</u>, and there is sufficient evidence in the record to support the finding that this court cannot say that it is an "unreasonable" finding under § 2254(d)(2).[5] Nor has petitioner demonstrated by clear and convincing evidence that the finding was incorrect. 28 U.S.C. § 2254(e)(1). Accepting, therefore,

---

[5]Petitioner's deposition testimony on this issue was inconsistent. Although petitioner testified at two points in his deposition that if he had known he was facing a 25-year minimum sentence he would have "asked for a plea bargain" or "would have plea bargained if [he] had to," when asked if he wanted to go to trial "regardless of what [defense counsel was] telling [him] about sentencing," he stated that he wanted to go to trial to prove he wasn't guilty. Deposition of Richard Hostetter (#19, Ex. 140) at 24-25, 32. This is further supported by the deposition of defense counsel, who noted that although she did not remember seeing the specific plea bargain at issue in petitioner's post-conviction proceedings, if it had been received she would have discussed it with petitioner but that petitioner "could not accept [a guilty plea]" and "want[ed] to proclaim to the world" that he was innocent of the charges. Deposition of Mary Grimes (#19, Ex. 141) at 64, 82. Additionally, the petitioner, in statements made directly to the post-conviction court, repeated that "I think that all the evidence we have will - will - will show that I didn't commit this crime. I've always said that, and I always will say that." Transcript of Trial Proceedings (#19, Ex. 154) at 9. The court evidently found this to be inconsistent with his assertion that he would have taken a plea bargain, and questioned him on it prior to closing the hearing and taking the matter under advisement. <u>Id.</u> This provided the court with a chance to evaluate petitioner's credibility on this very issue.

that factual finding,[6] it is hard to accept petitioner's argument that he was prejudiced by the alleged failure to present a plea offer to him or that he was allegedly not properly advised as to which set of sentencing guidelines would be applied in the event of a conviction. In the absence of prejudice, his claim of ineffective assistance cannot stand. <u>Strickland</u>, 466 U.S. at 697. Petitioner's first claim for relief should be dismissed.

## II.    <u>Ground Two</u>

Petitioner also contends that counsel was ineffective for failing to contact Raymond Provencher and Harold Stookey as part of the defense investigation, and for failing to call them as exculpatory witnesses. According to petitioner, these witnesses were lodged with petitioner's co-defendant (John Harris) in the Yamhill County Jail, and they would have testified that Harris confessed to them that he had, in fact, committed the murder.

This claim was also presented to the state court, which made the following relevant findings of fact:

> 2.    Counsel thoroughly and adequately investigated witnesses and physical evidence in petitioner's case. Further, due to the overwhelming evidence presented against petitioner, petitioner failed to prove the existence of any evidence which was overlooked by counsel that may have made a difference in the outcome of his case.

> 3.    Petitioner failed to prove that the decision to not call Raymond Provencher as a witness in petitioner's case was not prudent, and would have made a difference in its outcome. Therefore, counsel cannot be considered inadequate for failing to call this potential witness.

> 4.    Petitioner failed to prove that the testimony of Harold Stuckey [sic] would have made a difference in the outcome of his case. Therefore, counsel cannot be considered inadequate for failing to call this potential witness.

---

[6]Pursuant to § 2254(e)(1), a determination of a factual issue by the state courts is presumed to be correct unless petitioner rebuts the presumption by clear and convincing evidence.

...

18.    Counsel was extremely competent.

Findings of Fact & Conclusions of Law (#19, Ex. 156) at 3-4, 6. The court again concluded, based

on these findings, that petitioner's right to effective assistance of counsel was not violated. Id. at 6.

As implied by the state court's findings, the evidence presented by respondent suggests that

Provencher was contacted, but that counsel did not feel that calling him would be advantageous.[7]

Counsel did testify that petitioner was given the choice as to whether to call Provencher or not,

although she did not have a clear recollection of exactly how that conversation went. Deposition of

Mary Grimes (#19, Ex. 141) at 38-42. In any event, there is no evidence as to what Provencher

could or would have testified to beyond petitioner's claims.[8] As such, it is impossible for this court

to find that a failure to call Provencher as a witness was unconstitutional error - particularly in light

of the state court findings to the contrary. Petitioner's claim for relief on this basis should be denied.

More troubling is the question of whether counsel contacted Harold Stookey. Stookey

provided petitioner's post-conviction counsel with an affidavit in which he declared that Harris did,

indeed, confess to him; that he was willing and able to testify to such; and that trial counsel for

petitioner never contacted or interviewed him. Indeed, counsel, in her deposition for the state post-

conviction proceedings, recognized Stookey's name but could not recall if she or any other member

of the defense team had contacted him. Deposition of Mary Grimes (#19, Ex. 141) at 43. Neither

did the defense investigator working the case recall whether he interviewed Stookey. Deposition of

---

[7]Petitioner provided the court with affidavits from Provencher's attorneys, who stated that
Provencher was not contacted by the Hostetter defense team. However, the post-conviction court
apparently accepted the view that Provencher was contacted (thus the finding that "the decision not
to call" Provencher was not inadequate) (emphasis supplied).

[8]Provencher died shortly after petitioner's trial. Letter Certifying Death (#18, Ex. 120) at 1.

<u>Jim Byrnes</u> (#19, Ex. 142) at 16.  Although respondent suggests that Stookey might not have been willing to testify in this manner while Harris was alive - i.e., during Hostetter's trial - but rather waited to communicate the confession until Harris had died, making the failure to contact him non-prejudicial, there is no competent evidence in the record to support that assertion.  Similarly, I cannot definitively conclude that the evidence, which was admittedly hearsay, would be inadmissible as the state contends.  <u>See</u> Oregon Evidence Code Rule 804(3)(c).[9]

It is one thing to, as was the case with Provencher, contact a witness with exculpatory evidence and decline to call that witness.  It is another thing entirely to know of such a witness and to fail to contact that witness at all.  If, indeed, the defense team was notified of Stookey's willingness to testify as to Harris' alleged confession, and failed to contact him, such would constitute ineffective assistance of counsel under <u>Strickland</u>.  Because the evidence may have been admissible, and may have made a difference in the outcome of the trial, I cannot say that such deficient performance would not be prejudicial.

As such, it is ORDERED that upon adoption of these findings and recommendations by the district court, a telephone conference will be scheduled to establish an appropriate timeline for conducting an evidentiary hearing on the Stookey issues.  After the conclusion of that hearing, the court will issue further findings and make recommendations about the appropriate disposition of petitioner's Stookey claim.  Should the district court modify or reject these recommendations, this court will adjust this order accordingly.

---

[9]OEC Rule 804(3)(c) provides that: "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability [is not excluded as hearsay].  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

## CONCLUSION

Petitioner's claim for relief on the grounds that he was not informed of a plea offer and was erroneously informed as to the relevant sentencing guidelines should be denied. Petitioner's claim for relief on the grounds that counsel failed to contact and/or call Provencher as a defense witness should also be denied. Petitioner's claim for relief on the grounds that counsel failed to contact Stookey as a possible defense witness should be resolved following this court conducting an evidentiary hearing.

DATED this 25st day of August, 2005.

_____
Thomas M. Coffin
United States Magistrate Judge